IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17–cv–01295–RM–KMT

PAMELA STONE, a citizen of the United States,
TWYLA RUSAN, a citizen of the United States,
M. JAMIE MORROW, a citizen of the United States,
THE SOUTH PARK COALITION, INC., a non-profit 501(c)(4) Colorado corporation, and
BE THE CHANGE USA, a non-profit 501(c)(4) Colorado corporation,

      Plaintiffs,

v.

HIGH MOUNTAIN MINING COMPANY, LLC, a Wyoming limited liability company, and
JAMES R. MURRAY, a citizen of the United States,

      Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on "High Mountain Mining Company's and James S. Murray's Motion to Dismiss Complaint" (Doc. No. 13 [Mot.], filed July 11, 2017). Plaintiffs filed their response on August 1, 2017 (Doc. No.22 [Resp.]), and Defendants filed their reply on August 15, 2017 (Doc. No. 24 [Reply]).

## STATEMENT OF THE CASE

Plaintiffs bring claims pursuant to the Federal Water Pollution Control Act, more commonly referred to as the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.*, against Defendant High Mountain Mining Co, LLC ("High Mountain"), which operates the Alma Placer Mine, which Plaintiffs allege has discharged pollutants from its lands into the Middle Fork of the

South Platte River ("Middle Fork") without a National Pollution Discharge Elimination System permit or "dredge and fill" permit, in violation of §301, §402, and §404 of the CWA, 33 U.S.C. §§1311, 1342 and 1344. (*See* Doc. No. 1 [Compl.].) Plaintiffs also assert claims against Defendant James R. Murray, the managing member (owner) of High Mountain Mining, on the same bases. (*Id.*)

## STANDARDS OF REVIEW

*A.    Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint s "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

B.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the

3

plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

A.  *CWA Notice Requirements and Applicable Law*

The Clean Water Act provides for citizen suits, which may be commenced by "any citizen" against a person or entity "alleged to be in violation of" effluent standards or limitations under the Act or related orders. *See generally* 33 U.S.C. § 1365(a). Such citizen suits require

4

that a 60-day notice letter be sent prior to commencing litigation, as set out by Section 505(b) of the Act. *See* 33 U.S.C. § 1365. Environmental Protection Agency has promulgated the following regulation regarding 60-day notice letters prerequisite to CWA citizen suits:

> *Violation of standard, limitation or order.* Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify [1] the specific standard, limitation, or order alleged to have been violated, [2] the activity alleged to constitute a violation, [3] the person or persons responsible for the alleged violation, [4] the location of the alleged violation, [5] the date or dates of such violation, and [6] the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a) (italicized text in original).

Controlling case law has strictly construed the notice requirements set out above. In *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989), the Supreme Court addressed "whether compliance with the 60-day notice provision is a mandatory precondition to suit or can be disregarded by the district court at its discretion," *id.* at 23, and concluded that the requirement is a "mandatory conditio[n] precedent to commencing suit," *id.* at 31, and "a specific limitation on a citizen's right to bring suit," *id.* at 26. *Hallstrom* observed that the notice requirement "strike[s] a balance between encouraging citizen enforcement . . . and avoiding burdening the federal courts with excessive numbers of citizen suits," and concluded that "[g]iving full effect to the words of the statute preserves the compromise struck by Congress." *Id.*

*Hallstrom* held that dismissal was the correct remedy for non-compliance with the notice requirement, noting although the Court was "sympathetic" to the possibility that dismissal "would unnecessarily waste judicial resources," dismissal would nevertheless "further the congressional purpose of giving agencies and alleged violators a 60-day nonadversarial period to achieve compliance." *Id.* at 32. Therefore, "where a party . . . fails to meet the notice and 60-

day delay requirements . . . the district court must dismiss the action as barred by the terms of the statute." *Id.*

Following *Hallstrom*, the Tenth Circuit has embraced a strict approach to the notice requirement. In *New Mexico Citizens for Clean Air v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 833 (10th Cir. 1996) ("*New Mexico Citizens*"), plaintiffs included both a citizens' group and the Pueblo of San Juan. "The citizens group gave the sixty-day notice . . . but the Pueblo did not." 72 F.3d at 832. While the court observed that "some district courts have adopted a pragmatic view that notice by one plaintiff acts as notice by all," it expressly rejected that approach. *Id.* at 833. The court emphasized that "the purpose of pre-suit notice is to allow . . . a nonadversarial time period" to seek a resolution and "[i]f the defendant and the agencies do not know the parties involved, effective negotiation is not possible." *Id.* (citing *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1352–54 (9th Cir. 1995)). *New Mexico Citizens* also reiterated the statement from *Hallstrom* endorsing "strict adherence to the procedural requirements," as "the best guarantee of even-handed administration of the law." *Id.* at 833 (quoting *Hallstrom*, 493 U.S. at 31). The court therefore held that "one plaintiff's compliance with the pre-suit notice requirements of the Clean Water Act . . . does not satisfy the duty of another plaintiff to give notice on its own behalf," *id.* at 831, and that "failure to give proper notice before bringing suit" meant the Pueblo "was not a proper party to the action," *id.* at 833.

More recently, in *Karr v. Hefner*, 475 F.3d 1192 (10th Cir. 2007), the plaintiffs had sent a 60-day notice letter, but the Tenth Circuit reviewed whether its contents were sufficient to meet the requirements of 33 U.S.C. § 1365(b) and 40 C.F.R. § 135.3(a)—the same analysis which the Court must undertake here. *Karr* first observed that the "guiding principle" of the notice

requirement "is to give the [alleged violator] an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Karr*, 475 F.3d at 1200 (internal quotation marks omitted). "Accordingly, notice is to be evaluated from the recipient's perspective, and the notice's identification of the alleged violations must be clear." *Id. Karr* also stated that it is insufficient if the notice "generally orients the . . . violator as to the type of violation." *Id.* (quoting *Cal. Sportfishing Prot. Alliance v. City of W. Sacramento*, 905 F. Supp. 792, 799 (E.D. Cal. 1995)). Rather, "the recipient of the notice must understand from the notice what the citizen *is alleging*—not what the citizen could allege if the citizen knew more." *Id.* (emphasis in original).

Reviewing decisions in other courts, *Karr* further noted that notice letters must "provid[e] enough information to make the defendant's alleged violations easy to understand," and cited approvingly to a notice letter that "listed at least specific pollutants, specific locations, and specific permits the defendant was alleged to have violated." *Id.* at 1201 (citing *Waterkeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 917 (9th Cir. 2004) and *Pub. Interest Research Grp. v. Hercules*, 50 F.3d 1239, 1242 n.3 (3d Cir. 1995)).

Applying those principals, the *Karr* court then found that the notice letters sent in that case were insufficient. The Court reviewed a typical example, which alleged, in part, that the violator(s) had "caused construction to commence and continue" at an identified oil well site, that such construction was "causing a continuous release of pollutants, including hazardous and toxic pollutants . . . in violation of 33 U.S.C. §§ 1311, 1317 and 1341 and other statutory and regulatory provisions of or under the Clean Water Act," and was "causing heavy metals to continuously or intermittently discharge," all without obtaining a CWA permit for such

7

discharge. *Karr*, 475 F.3d at 1201–02 n.3. The Court held this notice was insufficient. *Id.* at 1203 ("Its shortcomings are pervasive.") Among other deficiencies, the Court held the notice failed to identify the point source of the discharge, noting that "construction activities" at a well site were not a clear point source. The *Karr* court also held that the letter failed to adequately identify the laws allegedly violated, *id.* at 120, emphasizing that notice "must provide 'sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated,'" id. at 1203 (quoting 40 C.F.R. § 135.3(a)). The *Karr* letter also frequently cited to "regulations that do not apply," *id.* at 1203, and in other places, "the citations [were] too general to be helpful," *id.* at 1204. The Tenth Circuit held this "shotgun approach" was inadequate. *See id.* at 1194.

In sum, *Karr* held that the failure to specify a point source or "provide adequate guidance regarding what provision . . . had been violated" made the notice letter inadequate as a matter of law, *id.* at 1205, describing it as "[h]ardly more helpful than a letter telling Defendants merely that they have violated the CWA at each listed well site," *id.* at 1204, and characterizing the letter as having impermissibly "substituted sweeping language for the particularity required by 40 C.F.R. § 135.3(a)," *id.* at 1201.

B.  ***Whether Notice Requirement is Jurisdictional***

At the outset, the court notes it is not clear whether the notice requirement is a matter of this Court's subject matter jurisdiction. Though *Hallstrom* stressed that an essentially identical provision in the Resource Conservation and Recovery Act was a "mandatory condition[] precedent to commencing suit," the Court expressly declined to determine whether the requirement was "jurisdictional in the strict sense." 493 U.S. at 31. Following *Hallstrom*, the

8

federal courts of appeals have split on whether the notice requirement is jurisdictional in nature. *Compare*, *e.g.*, *Waterkeepers N. Cal. v. Ag Indus. Mfg., Inc.*, 375 F.3d 913, 916 (9th Cir. 2004) (compliance required for jurisdiction) *with Am. Canoe Ass'n v. City of Attalla*, 363 F.3d 1085, 1088 (4th Cir. 2004) (agreeing with Fifth Circuit that "the notice requirement is more procedural than jurisdictional"); *but see Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 400 (4th Cir. 2011) (declining to determine whether the mandatory notice requirement is jurisdictional) (citing *Hallstrom*, 493 U.S. at 31)).

The Tenth Circuit has thus far not taken an express position, *cf. N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 833 n.2 (1996) (finding it unnecessary to decide the "intriguing" question left open by *Hallstrom*), but its decision in *Karr* strongly points toward a truly jurisdictional interpretation, 475 F.3d at 1196 (reviewing jurisdictional issue *de novo* and affirming *sua sponte* dismissal due to inadequate notice). Absent clear direction from the Tenth Circuit, this court declines to determine whether the notice requirement is a jurisdictional prerequisite.

Regardless of whether the requirement is jurisdictional, however, notice is a mandatory precondition that, if not met, requires dismissal of the action. *See Hallstrom*, 493 U.S. at 33.

C.  *Plaintiffs' Notice of Intent*

Plaintiffs' notice letter ("NOI") initially sates that High Mountain violated the CWA "by discharging pollutants into the Middle Fork without required permits and state certifications." (Compl., Attach. 1 ["NOI"] at 1; Mot., Ex. 6 ["NOI"] at 1.) The NOI then states as follows:

> The Company is in violation of the Clean Water Act's effluent standards, limitations and orders by discharging sediments and/or pollutants into the Middle Fork without obtaining a national pollutant discharge elimination system ("NPDES") permit, or state pollutant discharge elimination system ("SPDES"), or

9

a certification that such discharges meet Colorado water quality standards, as required under 33 U.S.C. § 1341. The Company has violated the permitting requirements of Clean Water Act §402 (NPDES) and §404 (dredge and fill). The Company admits it did not have an NPDES or SPDES permit for at least one of the discharges described herein, and our research has disclosed that it has no NPDES, SPDES or §404 permit for the other discharges identified in this Notice. The Company's unpermitted discharges to navigable waters violate [33] U.S.C. §§ 1311, 1342 and 1344.

II. Description of Violations

There are at least four sources of unpermitted discharges: the intake pipe at the Alma Placer Mine; two pipes/culverts at or about the lower limits of the Alma Placer Mine, underneath Highway 9, approximately 0.3 – 0.5 miles downstream from the Pump House; and through the groundwater from the mine via the alluvium soil. From each of these four sources, the discharged materials moved and move from the mine and into the Middle Fork, which is a navigable water of the United States. The following addresses the discharges that have been affirmatively identified.

2014 Discharge: On or about October 3 through October 4, 2014, the Company discharged a pollutant into a water of the United States, to wit, a large plume of sediment, mud, mine waste, and other materials from the Alma Placer Mine into the Middle Fork.

The 2014 discharge from the Mine travelled downstream and left a fine-grained, white to yellow-brown, sedimentary precipitant in the Middle Fork. The pollutants discharged into the Middle Fork at that time (based on government sampling) include, but are not limited to: cadmium, iron, lead, arsenic, magnesium, aluminum, calcium, uranium, radon, zinc and manganese.

The Company has stated its belief that the discharge is related to a fresh water intake pipe at one of its settling ponds (Pond 4). The Citizens have determined that it is just as likely that the discharge occurred from Pond 4, travelled internally on Company property, and discharged through one of the two Culverts (discussed below) into the Middle Fork. If this is correct, then the mechanism of the 2014 discharge has yet to be properly identified, the settling ponds are inadequately contained, and there is a likelihood of recurrence.

While the Company has paid a fine to the Colorado Division of Reclamation Mining (DOR) and Safety, this agency does not enforce the Clean Water Act in Colorado and does not have authority to prosecute a state action under a State law comparable to section 1319 of the Clean Water Act. Moreover, the administrative penalty assessed by DOR is inadequate under Federal law, was assessed by an

agency with goals that differ from the environmental agencies that enforce the Clean Water Act, and, given the significant and continuing injuries to public resources occasioned by the discharge was inadequate. Upon information and belief, neither the EPA nor the Colorado Department of Public Health and Environment have acted to enforce or address the violations occasioned by the 2014 discharge, nor other violations discussed in this Notice Letter.

Notably, the sediment that was discharged in 2014 is still present in the Middle Fork. No §404 (dredge and fill) permit has been obtained by the Company for this sediment.

Ongoing Discharges: Three additional sources of ongoing, unpermitted discharges exist: (1) a pipe/culvert located at or about the lower limits of the Alma Placer Mine just downgradient of the "terminal pond" on the Company's property, which flows underneath Highway 9, approximately 0.3 – 0.5 miles downstream from the Pump House ("Culvert 1"), (2) a similar culvert ("Culvert 2") located on the Company's property approximately one-tenth of a mile upstream of Culvert 2 (together, the "Culvert Discharges"), and (3) ongoing leakage from the Company's settling ponds into the groundwater beneath the ponds which then discharges into the Middle Fork (See map attached as Exhibit 1.)

The Culvert Discharges, and the groundwater discharges, represent sources of contamination that are ongoing and likely to continue absent modifications to the Alma Placer Mine. Indeed, there is a wetland area that ponds waters just north of the two Culverts on the Company property, which appears to detain pollutants before they flow through Culverts 1 and 2 and then discharge into the Middle Fork. Although more investigation will be undertaken, if necessary, it appears that one or more of the Company's settling ponds, including the terminal pond, are unlined and are leaking pollutants into these wetland area just north of Culverts 1 and 2. It is especially likely that the terminal pond, being located directly uphill and upgradient of Culvert 2, is a major source of pollutants flowing through Culvert 2.

Sampling of the Ongoing Discharge: Sampling of the Culvert Discharges in the fall/winter of 2016 demonstrated pollutants present therein, specifically Aluminum, Magnesium, Manganese, Potassium, Sodium, Sulfur, Uranium, Iron, Lead, and Carbon. These contaminants include heavy metals, represent known Middle Fork mining district contaminants and appear to replicate contaminants present in at least one of the Company's operational settling ponds. There is a reasonable likelihood that the Culvert Discharges will continue. You have previously acknowledged that your company has not obtained, or applied for, a permit for such discharges. There is also a reasonable likelihood that the ongoing discharge of materials will cause lasting environmental degradation of the Middle

Fork. Future injury to the river ecosystem and the watershed is likely to continue absent significant modifications to the Company's property and operations.

The Company is responsible for continuing violations of the Clean Water Act which prohibits the discharge of pollutants in any amount without a permit.

(*Id.* at 1–3.)

### i. *2014 Discharge*

Defendants argue that, to the extent the plaintiffs attempt to assert claims regarding the 2014 Discharge, the claims should be dismissed. (Mot. at 13.)

As to the 2014 Discharge, the NOI states that, on or about October 3 through October 4, 2014, High Mountain discharged a pollutant into the Middle Fork. (NOI at 2.) Plaintiffs then surmise that it is "*likely* that the discharge occurred from Pond 4, travelled internally on Company property, and discharged through one of the two Culverts . . . into the Middle Fork. *If this is correct*, then the mechanism of the 2014 discharge has yet to be properly identified . . . and there is a likelihood of recurrence." (*Id.* [emphasis added].)

"[T]he purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987). Accordingly, citizens lack statutory standing under § 505(a) to sue for violations that have ceased by the time the complaint is filed. *Id.* at 56–63. Thus, to the extent Plaintiffs seek to assert claims related to the discharge that occurred from October 3 through October 4, 2014, Plaintiff's claims should be dismissed for lack of jurisdiction.

Nevertheless, Plaintiffs argue they should be allowed to conduct discovery to determine whether the culvert discharges are continuing. (Resp. at 11–21.) Plaintiffs cite *Alliance for the*

*Wild Rockies v. US Dep't of Agric.*, 772 F.3d 592 (9th Cir. 2014), in support of this argument. However, *Wild Rockes* does not address whether discovery should be allowed to determine if a past violation is continuing. Moreover, the Tenth Circuit has stated that "the recipient of the notice must understand from the notice what the citizen *is alleging*—not what the citizen could allege if the citizen knew more." *Karr*, 475 F.3d at 1200 (emphasis in original).

Plaintiffs' claims related to the 2014 Discharge should be dismissed without prejudice for lack of jurisdiction. As such, the court need not address Defendants' remaining arguments regarding the 2014 Discharge. (*See* Mot. at 10, 15–17.)

### ii. Sufficiency of Notice

#### a. Reference to Alleged Pollutants

With regard to the sufficiency of the allegations in the NOI, Defendants argue that, though "the NOI includes a laundry list of elements like aluminum and manganese, Plaintiffs never explain now those could conceivably be connected to High Mountain's operations." (Mot. at 10.) In response, Plaintiffs argues that "sampling of the Culvert Discharges taken by a geologist hired by Plaintiffs in the fall/winter of 2016" identified "ten pollutants." (Resp. at 7.) Plaintiffs then state that the NOI identifies the same "pollutants" and states that they "appear to replicate contaminants present in at least one of the Company's operational settling ponds." (*Id.* at 7–8 [citing NOI at 3.) Defendants dispute the authenticity of the sampling. (*See* Reply at 4.)

"[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.

13

1997). Even as to such documents, however, the court has discretion whether or not to consider them on a motion to dismiss. *See Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) ("*GFF Corp.* did not purport to decide whether consideration of materials appended to a motion to dismiss is mandatory or discretionary . . . . We agree with our sister circuits that . . . the court has discretion to consider such materials.").

"The requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). One such way to authenticate a document is to provide "[t]estimony [of a witness with knowledge] that a matter is what it is claimed to be." Fed. R. Evid. 901(b)(1). The sampling was not attached to the NOI sent to the defendants, and it was not mentioned in the Complaint. The sampling does not identify who performed the sampling or where the samples may have been taken. Moreover, the sampling attached to the Response is incomplete and missing the first and the last four pages. The last four pages, according to the table of contents, contains the chain of custody. Finally, the plaintiffs failed to provide any testimony or an affidavit showing that the sampling is what the plaintiffs purport it to be. Thus, the court declines to consider the sampling results.

The court agrees with the defendants that, absent the sampling results, the NOI fails to explain how the elements listed in the NOI are connected to High Mountain's operations.

### b. *Sources and Practices*

Defendants argue that, as it relates to the alleged "culverts" Plaintiffs do not state any practices that led to those alleged discharges or when they may have even occurred. (Mot. at 13.) Indeed, upon review of the NOI and the Plaintiffs' response, Plaintiffs have failed to

provide any specificity as to Defendants' practices that may violate the CWA. As to the "date or dates of such violation[s]," Plaintiffs argue that the NOI's reference to culverts sampled "in the fall/winter of 2016" is sufficient. (*See* Resp. at 9.) However, the fact that sampling was conducted in 2016 is irrelevant to the when the violations that led to such allegedly abnormal sampling may have occurred. Thus, Plaintiffs' NOI also is deficient in this regard. *See Little v. Louisville Gas and Elec. Co.*, 33 F.Sup.3d 791, 804 (W.D. Ky. 2014) (claim dismissed where "NOI fails to provide the date of a violation, the location of an outfall, or a description of the nature of a violation – stating only that 'emissions are regularly in the form of dust traveling in the air, as well as in the form of storm water runoff from the [site].'"); *National Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 175 F.Supp.2d 1071, 1077 (E.D. Tenn. 2001) (claim dismissed where NOI does not specify dates of alleged violations and only states that defendant has "regularly violated" the standard "for at least the last five years.")

Defendants also argue that Plaintiffs do not describe with any specificity where the "culverts" are located. (Mot. at 11.) In the NOI, Plaintiffs allege "two pipes/culverts at or about the lower limits of the Alma Placer Mine, underneath Highway 9, approximately 0.3 – 0.5 miles downstream from the Pump House; and through the groundwater from the mine via the alluvium soil" are sources of the discharges. (NOI at 2.) Defendants argue that "Plaintiffs have left everyone to guess where 'Culvert 1' is located within a 0.2 mile stretch of the River. [NOI at 3.] For reference, 0.2 miles equals 1,056 feet. Plaintiffs even state that Culvert 1 is 'underneath Highway 9,' which is not even within High Mountain's mine permit area." (Mot. at 11.) As to "Culvert 2," Plaintiffs suggest it is located within a 0.1 mile stretch of the River. (NOI at 3.)

Defendants argue that Plaintiffs have access to the River and could have specifically identified the alleged culverts, just as they have done for the alleged Mine location. (Mot. at 11.)

In their Response, Plaintiffs argue that "Defendants are aware of the location of their settling ponds" and that they received the map with the NOI. (Resp. at 7.) However, Plaintiffs ignore that the map attached to their NOI provides a *single* arrow that fails to point specifically to anything, let alone two culverts. (*See* Mot., Ex. 6 at 16.) Underscoring the deficiency of the original map, Plaintiffs attach a new map to their Response.[1] (*Id.*, Attach. 5.)

Finally, Defendants argue that, "[a]s it relates to alleged 'ongoing leakage from [High Mountain's] settling ponds,' Plaintiffs again failed to identify any sources and practices that led to any alleged 'leakage,' or when the leakage may have occurred." (Mot. at 11–12 [alteration in original].) Indeed, The NOI alleges only that, "[a]lthough more *investigation will be undertaken*, if necessary, *it appears* that one or more of the Company's settling ponds, including the terminal pond, are unlined . . . ." (NOI at 3 [emphasis added].) Plaintiffs make no attempt to identify which pond they allege is making any sort of "discharge," or when. As stated above, High Mountain must understand from the NOI what Plaintiffs are alleging, "not what [they] could allege if [they] knew more or cared about other possible transgressions." *Karr*, 475 F.3d at 1200. Plaintiffs' shotgun approach complaining about alleged leakage from "the Company's settling ponds" falls far short of the specificity required by the CWA. *Id.* at 1194.

### c. *Identification of Laws Violated*

Defendants also argue that the NOI fails to identify with specificity the laws that High Mountain allegedly violated. (Mot. at 12–13.)

---

[1] As Defendants dispute the authenticity of the new map, the court will not consider its contents. *See GFF Corp.*, 130 F.3d at 1384.

16

A notice letter fails when it states only that "Defendants have violated the CWA and regulations and permits thereunder." *Karr*, 475 F.3d at 1204. The NOI states only that Defendants violated CWA sections 1341, 1342 and 1344 and the CWA's "effluent standards, limitations and orders." (NOI at 1.) The Tenth Circuit has held these "citations are too general to be helpful," and Plaintiffs cite to no specific standard, limitation or order. *Karr*, 475 F.3d at 1204.

In their Response, Plaintiffs fail to address *Karr* in this context or attempt to distinguish their NOI from the deficient NOI in *Karr*. Because the NOI only cites the general CWA statutes that were insufficient in *Karr*, the NOI is deficient.

## CONCLUSION

To the extent Plaintiffs seek to assert claims related to the discharge that occurred from October 3 through October 4, 2014, Plaintiff's claims should be dismissed for lack of jurisdiction. Moreover, because Plaintiffs' NOI is deficient, their CWA claims should be dismissed.

The court need not address Defendants' remaining arguments.

**WHEREFORE**, for the foregoing reasons, this court

**RECOMMENDS** that "High Motion Mining Company's and James S. Murray's to Dismiss Complaint" (Doc. No. 13) be **GRANTED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.

17

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-*

*Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 5th day of March, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge